**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| **JEANINE INGRAM,** | : |
| **Plaintiff,** | :    **Civil Action No. 06-3425(KSH)** |
| | : |
| **v.** | : |
| | :    **OPINION** _____ |
| **COACH USA, INC.,** | : |
| | : |
| **Defendant** | : |

---

This matter is before the Court on plaintiff Jeanine Ingram's motion to: (1) conditionally certify this case as a collective action under 29 U.S.C. § 216(b); (2) provide judicial notice to all potential plaintiffs; and (3) require the defendants to provide an electronic list of potential plaintiffs and their contact information.  For the reasons set forth below, the motion is granted and the proposed notice shall be disseminated as modified herein.

**PROCEDURAL HISTORY/FACTUAL BACKGROUND**

On July 26, 2006, plaintiff Jeanine Ingram filed a Complaint against Coach USA, the parent company of bus companies that operate in the northeast of the United States and ONE Bus, Inc., one of its operating companies, which provides public transportation in Orange, Newark, and Elizabeth, New Jersey, for violations of the Fair Labor Standards Act.  Docket No. 1.  Coach USA has four subsidiaries that operate out of the Elizabeth, New Jersey facility, namely Olympia Trails, ONE Bus, Inc., Red & Tan, and Independent Bus.  Deposition of Jaime Rodriguez ("Rodriguez Dep."), dated April 9, 2007, at 22, 227-29; Deposition of Donald Carmichael ("Carmichael Dep."), April 12, 2007, at 34.

Plaintiff worked as an operations supervisor for ONE Bus from November 1999 through

June 30, 2005.  Deposition of Jeanine Ingram ("Ingram Dep."), dated February 16, 2007, at 37; Rodriguez Dep.at 155-58.  From July 23, 2003 to April 12, 2007, approximately fourteen other individuals also held the title of bus dispatcher or operations supervisors at the Elizabeth facility. Rodriguez Dep. at 15-18, 24, 33, 76-77, 91,181-82, 222-27; Carmichael Dep. at 34-35, 54-55.

The title "operations supervisor" has been used since approximately 2004-05 to refer to bus dispatchers, Declaration of Jeanine Ingram ("Ingram Dec."), dated June 18, 2007,  at ¶ 3; Rodriguez Dep. at 18, 180-82 (stating that he refers to the operations department as "dispatch" but asserts that he has referred to the individuals who worked there as dispatchers until the job title was changed to operations supervisors) but the duties of a bus dispatcher and operations supervisor are the same.  Rodriguez Dep. at 18, 180-82.  The operations supervisors sit at windows, id. at 25, and their duties include: (1) ensuring that the driver's report on time and are in uniform, Ingram Dec. at ¶ 4, Rodriguez Dep. at 23, 96; (2) assigning drivers from a pre-approved list to cover routes that were to be handled by drivers who arrive late, Ingram Dec. at ¶¶ 4 and 10, Rodriguez Dep. 96-98, 103-06, 168-76, 185-88, 230-31; (3) answering  incoming telephone calls and handling customer problems or inquiries, Rodriguez Dep. at 122; (4) sending buses to pick up passengers when a bus breaks downs, id. at 35-36; (5)  reviewing accident forms to be sure they are properly completed, id. at 40; (6) distributing and collecting sign- in sheets and recording the driver's time in/time out, Ingram Dec. at ¶ 20, Rodriguez Dep. at 43-45; (7) checking logs for completeness and compliance with Department of Transportation ("DOT") regulations, such as time limits for certain driving tasks, Ingram Dec. at ¶ 8, Rodriguez Dep. at 48-52; and (8) distributing, collecting and reviewing for completeness Driver Vehicle Inspection Report ["DVIR"] books.,  Rodriguez Dep. at 130-33, 148.

Operations supervisors can prepare and submit disciplinary reports that record conduct that can result in discipline, which are forwarded to the safety department, and discipline is meted out pursuant to the union contract.  Id. at 25, 97, 166.  Operations supervisor, however, can send home a driver who arrives late or provide him or her a different route, id. at 104, 214, or hold back a driver suspected of being under the influence of drugs or alcohol, id. at 234-35 and can recommend termination. Id. at 28, 31-32.

Operations supervisors do not have the authority to hire, fire, or sign checks, Ingram Dec. at ¶¶ 6, 7; Rodriguez Dep. at 24, 31, 35, nor do they supervise the bus drivers.  Rodriguez Dep. at 19-20, 96 (where Mr. Rodriguez explained that, as the assistant operations manager, he supervises the bus drivers and makes sure that all runs are covered); Ingram Dec. at ¶ 5(stating she had no supervisory responsibilities).   In addition, they do not set the schedules or the routes, Ingram Dec. at ¶ 10; Rodriguez Dep. at 101, 113-16, 128-29, or train other employees. Ingram Dec. at ¶ 9.

Operations supervisors, like the drivers, receive training on topics such as the proper completion of DVIRs.  Rodriguez Dep. at 55.  In addition, operations supervisors receive substance abuse training as well as training on the logs and DOT Regulations.  Id. at 64-66; Ingram Dec. at ¶ 19 (stating that plaintiff received training on substance abuse but that only her superiors could send a bus driver home for suspected abuse).

Plaintiff was not hired as a bus driver but does possesses a commercial driver's license ("CDL") that allows her to drive a bus, Ingram Dec. at ¶ 15; Ingram Dep. at 50, and, as a result, she is subject to random drug testing and medical certifications as well as certain safety and licensing requirements.  Ingram Dep. at 68-69,71-72; Certification of Mark Tabakman, dated

3

July 3, 2007 at Exs. C-G.  Other operations supervisors also possess CDLs and therefore are subject to the same requirements and have been called upon during 2007 to drive buses when operational exigencies arise.  Rodriguez Dep. at 151-54; Affidavit of Jaime Rodriguez, ("Rodriguez Aff.") dated July 3, 2007, at ¶¶ 3-4.  An operations supervisor, however, is not required to possess a CDL.  Rodriguez Dep. at 159.

The plaintiff states that she and the other individuals typically worked more than forty hours per week but were not paid overtime as required by the Fair Labor Standards Act ("FLSA").  Ingram Dec. at ¶¶ 12-14, Rodriguez Dep. at 74-75, 91-92.  As a result, she has brought suit and, by way of motion filed June 18, 2007, asks the Court to conditionally certify the class of employees who perform the duties of bus dispatchers/operations supervisors worked more than forty hours per week, and were not paid as required by the FLSA.

## SUMMARY OF ARGUMENTS

In support of her motion, plaintiff argues: (1) she and the putative collective action members, namely bus dispatchers at the Elizabeth Depot, are similarly situated as defined by the Section 216 of the FLSA because they share the same job duties, perform them in substantially the same manner, and are paid under the same compensation plan; and (2) notice to the potential plaintiffs is appropriate so that each receives accurate and timely information about the lawsuit and they can make informed decisions about whether to join with the plaintiff to prosecute their claims.  In addition, the plaintiff points out that the notice will toll the statute of limitations and prevent the erosion of the claims as well as promote judicial economy by having these similarly situated employees pursue their common claims in one forum.  The plaintiff also asserts that requiring the defendants to provide the list of the similarly situated employees in an electronic

4

format will facilitate dissemination of the notice.

The plaintiff also argues that: (1) merits decisions are not to be made at this point and thus a decision as to whether or not these similarly situated employees are exempt "administrators" under the FLSA is not yet before the Court; (2) the need for discovery concerning the individuals is not a factor ; and (3) the standards under Fed. R. Civ. P. 23 are not applicable as the "similarly situated" standard is less stringent that the standard to obtain class certification.

While the defendants contend that plaintiff is an exempt employee who maintained a license to drive a bus in interstate commerce and performed duties that impacted discipline and compensation and ensured defendants' compliance with various legal mandates, they do not dispute that she is similarly situated to other operations supervisors with regard to these duties and, for the purposes of the motion (and without waiving any statute of limitations arguments), acknowledge conditional collective action certification is appropriate, except to the extent it seeks to include operations supervisors at the Elizabeth facility who have driven a bus for the defendants. Defendants assert that an individual who actually drove a bus for the defendants is exempt under the motor carrier exemption of the FLSA as set forth in 29 U.S.C.§ 213(b)(1) and 29 C.F.R § 782. Thus, the defendants assert that the collection action should be limited to operations supervisors who have not driven a bus for the defendants or any Coach subsidiary while employed as an operations supervisor. Citing to a case involving a class of bus drivers and U.S. Department of Labor communications concerning defendant's Paramus terminal, the defendants argues that individuals who possess commercial driver's licenses are exempt from the overtime provisions of the FLSA and hence cannot be included in the putative collective action.

5

Put differently, defendants assert that plaintiff did not actually drive a bus while performing the duties of operations supervisor so she is not similarly situated to those operations supervisors who in fact drove a bus at least once every four months while holding this job title and thus such individuals cannot be part of her collective action.

The defendants also object to certain language contained in the proposed notice because: (1) it lacks a deadline for filing consent to join forms and that a thirty-day deadline to opt-in will ensure that there is orderly litigation; (2) it lacks notice to the recipients of the notice that those who opt-in may be responsible to share in the payment of the costs if the plaintiff does not prevail and that such notice should be provided because it is a fair statement of their rights and potential obligations; (3) it fails to list only the four operating companies located at the Elizabeth facility and that this specificity is warranted because the plaintiff seeks certification of a class at the  Elizabeth facility and will avoid any impression that it covers other Coach facilities or employees; (4) improperly refers to the plaintiff as a "bus dispatcher" when the actual title has been operations supervisor since 2003 and the use of the phrase "bus dispatcher" is irrelevant and is a biased attempt to label her duties as nonsupervisory; and (5) it refers to a law firm and lawyers who have not entered appearances in this case.

In reply, plaintiff argues that excluding operations supervisors who have driven buses while holding that job title from the definition of similarly situated is improper because it is a manufactured defense as operations supervisors were called upon by the assistant operations manager, Mr. Rodriguez, to drive buses only after this law suit was filed.  Plaintiff argues that, at minimum, she is similarly situated to all operations supervisors/bus dispatchers who held the position before Mr. Rodriguez ordered the dispatchers to also drive buses.  In any event, to the

extent there was a change in the job position, this is relevant to damages, not certification. Plaintiff also asserts that the defendants have minimized the size of the collective action because they have attempted to ignore former dispatchers who are also part of the potential collective action.

Plaintiff also argues that her notice is proper because: (1) it reflects a format that other courts have approved; (2) inclusion of language concerning costs would intimidate individuals from opting in and is unnecessary because these people can still decline to proceed after opting in; (2) a specific opt-in date is not needed as the statute of limitations will continue to run until the opt-in members file their consent forms, and the defendants' proposed thirty-period is far too short given the educational level of the nonunionized potential collective action members and the fact that they are subject to the "whims" of management; and (3) the term "bus dispatcher" should be included in the notice because it was the job title defendants had used and is the term that employees regularly use at the Elizabeth facility when referring to operations supervisors.

The plaintiff, however, agrees to change the notice to list the four Coach USA companies that operate out of the Elizabeth facility and stated that she would correct the oversight in having failed to have Berger and Gottlieb obtain pro hac vice admission in this case.


**DISCUSSION**

**Collective Action Standard**

The FLSA governs hour and wage practices and requires, among other things, that employers pay covered employees at least a specified minimum wage for work performed and overtime pay for hours worked in excess of forty hours per week.  29 U.S.C. §§ 202, 207.  The

Act provides a mechanism that allows groups of such employees to proceed together to seek

recovery for violations of the act.  Section 216(b) specifically provides:

> [a]n action to recover . . . liability may be maintained against any employer . . . by one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  This provision allows a group of employees to proceed in a collective

action, which enables them to pool their resources to "vindicate their rights" at lower cost.

Hoffman-La Roch, Inc.v. Sperling, 493 U.S. 165, 170 (1985).  A collective action has two stages,

namely the conditional certification and notice stage and the final certification stage.  Morisky v.

Public Service Elec. & Gas, Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000); see also Dreyer v.

Altchem Environmental Services, Civ. No. 06-2393, 2006 WL 3676013 (D.N.J. Dec. 12,

2006)(citing cases).

        At the second stage, the Court makes a decision on final certification based upon a

"specific factual analysis of each employee's claim to ensure that each claimant is an appropriate

party.  Plaintiffs bear the burden of showing they are similarly situated to the proposed class."

Bosley v. Chubb Group, Civ. No. 04-4598, 2005 WL 1334565, at *2 (E.D. Pa. June 3, 2005)

quoted in Hewitt Associates, Inc., Civ. No. 06-267, 2007 WL 2121693, *3 (D.N.J. July 24,

2007).  Because a full factual record exists at this stage, a stricter standard is applied, Morisky,

111 F. Supp. 2d at 497; see also Hewitt, 2007 WL 2121693 at 3, and the Court examines various

factors, including "disparate factual and employment settings of the individuals plaintiffs, the

various defenses available to defendants, and fairness and procedural considerations."  Lusardi v.

Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987).  Because this often requires a determination as

to whether an employee has exempt or nonexempt status, courts examine the employee's duties, responsibilities, salary, and "the time spent performing administrative duties." Morisky, 111 F. Supp. 2d at 499.   To succeed in obtaining final certification, the plaintiff must make a showing that "the nature of the work performed by other claimants is at least similar to [their] own." Id. at 498 (citation omitted).

This case is presently at the first, conditional certification stage.

Stage One: Conditional Certification & Notice

As part of the first stage, the Court is required to determine, under "a comparatively limited standard," whether or not plaintiff's proposed collective group is constituted of similarly situated employees to whom notice should be sent. Morisky, 111 F. Supp. 2d at 497; Herring v. Hewitt Associates, Inc., Civ. No. 06-267, 2007 WL 2121693, *3 (D.N.J. July 24, 2007).  Put differently, the first stage requires a finding that: (1) the collective action members are "similarly situated"; and (2) the members affirmatively consent to join the action.  Hoffman-La Roche, 493 U.S. at 170.

To show that the plaintiff and the other employees are similarly situated, the plaintiff need not show that his position is identical to the positions of other putative class members. Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 405 (D.N.J. 1988), aff'd.,  Hoffman La-Roche v. Sperling, 493 U.S. 165, 170 (1989).  Rather the plaintiff must show "a factual nexus between [her] situation and the situation of other current and former [employees] sufficient to show that they are similarly situated."  Aquillino v. The Home Depot, Civ. No. 04-4100, 2006 WL 2583563 * 2 (D.N.J. Sept. 7, 2006).  The determination is made using "a fairly lenient standard" based on the minimal evidence before the Court.  Morisky, 111 F. Supp. 2d at 497; see also

9

Aquillino, 2006 WL 2583563 * 1-2.  At this stage, some courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan [in violation of law.]."  Morisky, 111 F. Supp. 2d at 497; see also Hewitt, 2007 WL 2121693 at * 3.  Other courts have stated that "to make a meaningful decision about whether certain people are similarly situated . . . [requires] . . . as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated."  Armstrong v. Weichert Realtors, Civ. No. 05-3120, 2006 WL 1455781 *1 (D.N.J. May 19, 2006); see also Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 51& n. 10 (3d Cir. 1989), rev'd on other grounds, Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 (3d Cir. 1995)(stating that only a modest factual showing that the plaintiff's position is similar to that of other employees and that the employees were victims of a common policy or scheme of the employer is required) .  The merits of the claims "need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated."  Aquillino, 2006 WL 2583563 at *2 (quoting Masson v. Ecolab, Inc., Civ. No. 04-4488, 2005 WL 2000133, at *12-14 (E.D.N.Y. Aug. 18, 2005)).   If plaintiff satisfies the similarly situated standard, then the Court grants conditional certification of the collective action for the purpose of sending notice to the potentially effected employees and conducting discovery concerning the opt-in plaintiffs.  Herring, 2007 WL 2121693 at *3, 4 (noting a stage one finding "establishes nothing more than the right of the plaintiffs to establish a collective action" and "provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision.").

     Stage One Analysis

Here, the plaintiff has presented sufficient evidence embodied in deposition transcripts, affidavits, declarations, and documents to show that she is similarly situated to other employees who held or hold the job title bus dispatcher or operations supervisor at the Elizabeth facility. The undisputed record shows that the bus dispatchers/operations supervisors performed similar duties and had similar responsibilities and that they sometimes worked over forty hours per week without additional compensation.  Both  Ingram and Rodriguez described in detail the duties these employees performed, including: (1) ensuring that the driver's report on time and are in uniform, Ingram Dec. at ¶ 4, Rodriguez Dep. at 23, 96; (2) assigning drivers from a pre-approved list to cover routes that were to be handled by drivers who arrive at work late, Ingram Dec. at ¶¶ 4,10, Rodriguez Dep. at 104-06; (3) answering incoming telephone calls and handling customer problems or inquiries, Rodriguez Dep. at 23, 122; (4) sending buses to pick up passengers when a bus breaks downs, id. at 35-36; (5) reviewing accident forms to be sure they are completed in their entirety, id. at 40; (6) distributing and collecting sign-in sheets and recording the driver's time in/time out, Ingram Dec. at ¶ 20, Rodriguez Dep. at 43-45; (7) checking logs for completeness and compliance with DOT regulations, such as time limits for certain driving tasks, Ingram Dec. at ¶ 8, Rodriguez Dep. at 48-52; (8) distributing, collecting and reviewing DVIR books for completeness, Rodriguez Dep. at 130-33,148; (9) recording conduct on disciplinary reports that can result in discipline, Rodriguez Dep. at 25, 97; (10) imposing limited discipline by sending home a driver who arrives late or providing him or her a different route, Rodriguez Dep. at 29, 104, 214, or holding a driver back from driving if he or she is suspected of being under the influence of drugs or alcohol, id. at 234-35; and (11) recommending termination, id. at 27-28, 31-32, 35.

11

In addition, the undisputed record shows operations supervisors do not: (1) have the authority to hire, fire, or sign checks, Ingram Dec. at ¶¶ 6, 7 Rodriguez Dep. at 24, 31, 35;  (2) supervise the bus drivers;  Rodriguez Dep. at 19-20, 96 (where Mr. Rodriguez explained that as the assistant operations manager, he supervises the bus drivers and makes sure that all runs are covered) and Ingram Dec. at ¶ 5(stating she had no supervisory responsibilities); (3) schedules or the routes, Ingram Dec. at ¶ 10, Rodriguez Dep. at 100-03, 113-16, 128-29; or (4) train other employees; Ingram Dec. at ¶ 9.  Thus, it appears the individuals who hold or held the position of bus dispatcher or operations supervisor perform the same duties.

Finally, while the defendants may believe that they were not required to pay all of these employees for hours that they worked beyond forty hours, there is no dispute that at least some of these employees sometimes worked beyond forty hours per week and did not receive overtime compensation as defined under the FLSA.  Ingram Dec. at ¶ 12-14; Rodriguez Dep. at 74-75, 91-92.  Therefore, it appears that these employees were subject to the same compensation policy.

For these reasons, there is sufficient factual basis exists to conditionally certify the collective action and for judicial approval of notice to the similarly situated employees of this action and their right to opt in.  See Aquillino, 2006 WL 2583563 at *2.

Moreover, the defendants do not dispute that at least those bus dispatchers/operations supervisors who did not also drive buses are similarly situated to the plaintiff and do not oppose the motion for conditional certification to the extent it only includes operations supervisors who did not drive buses for the defendants. Defendants' Brief, dated July 6, 2007 at 1.  At this stage, however, the Court declines to consider the defendants' assertion that certain operations supervisors who hold or held CDLs and actually drove buses during the time they served as an

12

operations supervisor should be excluded from the group.  Id. at 8 (contending that "as a matter

of law" that "operations supervisors" who "drive[] a bus at least once every four (4) months . . .

[are] exempt [from the FLSA] as a driver" and cannot be a member of a collective action).  This

is a merits argument concerning whether or not such employees should be exempt pursuant to the

motor carrier exemption.  It is improper to consider that argument at this stage since this case is

before the Court only on a motion for conditional certification.  See, e.g., Hewitt, 2007 WL

2121693 at * 8 (citing Goldman v.Radio Shack, Civ. No. 03-32, 2003 WL 21250571 at *8

(E.D.Pa. Apr. 16, 2003)).  To address the argument properly requires a fuller factual record

concerning, among other things, whether or not any of the opt-in plaintiffs  also drove buses

while simultaneously serving as a operations supervisor, and the frequency of driving.  This may

be relevant to determine whether or not a particular employee falls within the motor carrier

exemption.  Discovery aimed at these issues shall be completed within the deadlines set forth in

the Order of Magistrate Judge Shwartz that will be issued.  Once the discovery is completed, the

case will be trial ready and the Court will be able to move to stage two of the process where it

will determine whether any of the opt-in plaintiffs are exempt and if final certification should be

granted.

**Court-Facilitated Notice**

        Once a court conditionally certifies a collective action, it has the discretion to provide

court-facilitated notice.  Hoffman-La Roche, 493 U.S. at 170.  Such notice:  (1) ensures that the

employees receive "accurate and timely notice concerning the pendency of the collective action,

so that they can make informed decisions about whether to participate," id..; and (2) "serves the

legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite

the disposition of the action." Id. at 172.

The defendants do not oppose the use of court-facilitated notice, but rather object to certain components of the plaintiff's proposed notice. The Court agrees with some of the objections and as a result, the plaintiff's proposed notice requires modification. First, a deadline by which individuals may opt-in must be included. A deadline ensures that the universe of potential claimants is known and the subjects of supplemental discovery needed to proceed to trial are identified and completed sufficiently in advance of the trial date. Second, and without opposition, the notice should identify the four companies that operate out of the Elizabeth facility so that there is no confusion that bus dispatchers/operations supervisors currently or formerly employed at the facility are the only ones who may be eligible to participate in this collective action. Third, the notice should only list lawyers authorized to represent the plaintiff in the case before this Court. Thus, any lawyer or law firm who has not entered an appearance in this case or granted pro hac vice admission to appear shall be stricken from the notice. To allow such names to stand would lead to a misimpression as the inclusion of their names would suggest that they represent the collective action before this Court when in fact they do not. Thus, any reference to Berger and Gottlieb should be removed, as they have never entered in an appearance in this case and have not sought or obtained pro hac vice admission

The defendants' two remaining objections to the notice, namely the inclusion of the word "bus dispatcher" and the defendants' request that notice advise the opt-ins about cost, are overruled. It appears that the term "bus dispatcher" had been used to refer to individuals who performed the same duties as the plaintiff until the title was changed sometime in 2004 or 2005. Compare Ingram Dec. at ¶ 3 with Rodriguez Dep. at 18, 180-82. In addition, it appears that the

14

word "dispatch" is used to refer to the section in which these employees currently work, Rodriguez Dep. at 180-82, and could easily be one that the employees may associate with a person who performs the job duties that plaintiff performed.  Thus, since the target audience for the notice may use the words dispatcher or operations supervisor interchangeably, inclusion of both the words "bus dispatcher" and "operations supervisor" will ensure that the audience understands to whom the notice applies.  The job title itself, of course, is of little consequence when determining if the duties are similar and so the defendants' concern that use of the term "bus dispatcher" seeks to suggest the job is ministerial is of little consequence.

Finally, the Court declines to require that the notice explicitly advise the opt-in plaintiffs that they could be required to pay the costs of litigation if the case were resolved against them.  First, the notice serves as a means to identify those who believe that they have been injured by the defendants' overtime policy and to give them a forum to pursue their potential claims.  The decision to actually pursue the claim can be made after the opt-in plaintiff consults with counsel and counsel advises him/her of their duties and obligations.  Second, the proposed notice already states that counsel is being paid on a contingency basis, see Notice at Part IV, and plaintiff's counsel are obligated to explain what this means to each plaintiff.  Contingency arrangements often address the topic of cost and so this will be explained to each potential plaintiff.  Third, to ensure that the opt-in plaintiffs are fully advised of their rights and obligations, the Court directs plaintiff's counsel to advise each opt-in of his or her obligations before the consent form is filed, including advising the opt-in plaintiffs that they maybe required to provide factual information (which may include responses to interrogatories and/or a deposition) and pay costs if the defendants prevail (assuming that the plaintiff's counsel have not decided to pay any such costs).

Counsel's filing of the consent form will be deemed to reflect counsel's representation that he or she has discussed with the opt-in plaintiff identified on the form the fee arrangement, cost obligations, and requirements to provide information.

For these reasons, the Court will overrule defendants' objection to the inclusion of the words "bus dispatcher" in the notice and will deny defendants' request that the notice include information concerning plaintiffs' obligation to pay costs if they do not prevail.


**Plaintiff's Demand for Contact Information**

Plaintiff also seeks contact information for current and former employees who held the bus dispatchers or operations supervisor title from July 23, 2003 to the present.  The defendants have not voiced any objection to this request.  The request is reasonable and will surely facilitate dissemination of the notice in a prompt and efficient fashion.  Therefore,  plaintiff's request for contact information for current and former employees who worked at the Elizabeth facility and held the bus dispatchers or operations supervisors position from July 23, 2003 through January 31, 2008 is granted. To the extent the information exists in an electronic format, it should be provided in such a format.

**CONCLUSION**

For all of these reasons, the motion for conditional certification of the collective action is granted.  The notice shall be issued but shall be modified as follows: (1) the deadline for opting-in shall be April 15, 2008; (2) the notice shall make specific reference to the four companies operating at the Elizabeth, New Jersey facility; (3) the notice shall include reference to the job title "bus dispatcher"; (4) there shall be language that notifies the opt-ins that if they choose to

16

opt in and pursue the action that they will have other obligations, including providing information about their job duties; and (5) the notice shall delete the mention of any attorneys who have not entered an appearance in this case or admitted pro hac vice in this case. Defendants shall provide plaintiff with a list of current and former employees who worked at the Elizabeth facility held the bus dispatcher or operations supervisor position from July 23, 2003 through January 31, 2008.

/s/  Katharine S. Hayden
 UNITED STATES DISTRICT JUDGE

Date: January 28, 2008